IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CENTRAL LABORERS' PENSION,** | ) | |
| **WELFARE AND ANNUITY FUNDS**, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case Number: 17-cv-1073 |
| | ) | |
| **MB LAND COMPANY, LLC** d/b/a | ) | |
| **MLC CONSTRUCTION,** and | ) | |
| **MATTHEW BURGESS,** individually, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COME NOW, plaintiffs, **Central Laborers' Pension, Welfare & Annuity Funds**, by and through their attorneys, Foley & Kelly, LLC, and for their Complaint against defendants, **MB LAND COMPANY, LLC** d/b/a **MLC Construction** and **Matthew Burgess,** individually, state as follows:

### Count I
### MB LAND COMPANY, LLC d/b/a MLC Construction
### 29 U.S.C. §§ 1132, 1145

COME NOW plaintiffs, **Central Laborers' Pension, Welfare & Annuity Funds**, by and through their attorneys, Foley & Kelly, LLC and for Count I of their Complaint against defendant, **MB LAND COMPANY, LLC** d/b/a **MLC Construction,** states as follows:

1.      This action arises under the laws of the United States and is brought pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132,1145 (hereinafter referred to as "ERISA"). Jurisdiction is based upon the existence of questions arising thereunder, as hereinafter more fully appears.

2.      Plaintiffs, **Central Laborers' Pension, Welfare & Annuity Funds**, are various pension, welfare and related joint labor-management funds and bring this action as "employee welfare benefit funds" and "plans", under the laws of ERISA.

3.      Defendant, **MB LAND COMPANY, LLC** d/b/a **MLC Construction** is a corporation conducting business in the State of Illinois, and is an employer as defined under ERISA.

4.      An authorized representative of defendant executed a Memorandum of Agreement dated October 20, 2016 thereby binding defendant to pay contributions to plaintiffs for employees of defendant within the jurisdiction of plaintiffs. Said Agreement is attached hereto as exhibit 1 and incorporated by reference herein.

5.      Exhibit 1 pertinently provides:

> **"This Agreement is entered into by and between the undersigned, herein called the "EMPLOYER" and the GREAT PLAINS LABORERS' DISTRICT COUNCIL, herein called the "UNION", representing and encompassing Local Unions Nos. 32, 165, 231, 309, 362, 393, 538, 727, 751, 911 and 996, together with any other locals which may come within the jurisdiction of the UNION."** Please see paragraph 1 of Exhibit 1.

> **"The EMPLOYER herein adopts all of those Collective Bargaining Agreements between the UNION and the NORTHERN ILLINOIS BUILDING CONTRACTORS ASSOCIATION, NORTHWESTERN ILLINOIS CONTRACTORS ASSOCIATION, ILLINOIS VALLEY CONTRACTOS ASSOCIATION, WESTERN ILLINOIS CONTRACTORS ASSOCIATION, GREATER PEORIA CONTRACTOS AND SUPPLIERS ASSOCIATION, INC., BUILDERS ASSOCIATION OF TAZEWELL COUNTY, INC., HIGHWAY AND HEAVY CONSTRUCTION CONTRACTORS ASSOCIATION OF TAZEWELL AND FULTON COUNTIES, QUAD-CITY BUILDERS ASSOCIATION, INC., THE ASSOCIATED CONTRACTORS OF THE QUAD CITIES, THE ASSOCIATED GENERAL CONTRACTORS OF ILLINOIS, CENTRAL ILLINOIS BUILDERS OF A.G.C., MCLEAN COUNTY CONTRACTORS GROUP, KANKAKEE AREA CONTRACTORS ASSOCIATION, INC., and all other employer association with whom the UNION or any of its affiliated locals have a duly negotiated and executed bargaining agreement and adopts all such agreements together with all amendments thereto."** Please see Paragraph 2 of Exhibit 1.

**"The EMPLOYER agrees to pay the amounts which the EMPLOYER is bound to pay under the Collective Bargaining Agreements to the CENTRAL LABORERS' PENSION FUND, to the NORTH CENTRAL ILLINOIS LABORERS' HEALTH & WELFARE FUND, to the ILLINOIS LABORERS' AND CONTRACTORS' TRAINING TRUST FUND, to the LABORERS' LOCAL 231 HEALTH AND WELFARE FUND, to the LABOERS' LOCAL 231 PENSION FUND, to the NORTHER ILLINOIS AND IOWA LABORERS' HEALTH AND WELFARE TRUST, to the CENTRAL LABORERS' ANNUITY FUND, to the NORTHERN ILLINOIS ANNUITY FUND, to the GREAT PLAINS LABORERS' ANNUITY FUND, to the LABOERS' LOCAL 231 ANNUITY FUND, to the LABORERS' OF ILLINOIS VACATION FUND, to the NORTH CENTRAL ILLINOIS LABORERS' DISTRICT COUNCIL LABORERS-EMPLOYERS COOPERATION AND EDUCATION TRUST, to the MIDWEST REGION FOUNDATION FOR FAIR CONTRACTING, to the MIDWEST REGION ORGANIZING COMMITTEE, to the LABORERS' POLITICAL LEAGUE, and any other BENEFIT FUND which may hereafter be created to established pursuant to any of the forgoing COLLECTIVE BARGAINING AGREEMENTS (FRINGE BENEFIT FUNDS), and to be bound by and be considered a party to the Agreements and Declaration of Trust creating said Trust Funds as if EMPLOYER had signed and received the original copies of the Trust instruments and amendments thereto. The EMPLOEYR ratifies and confirms the appointment of the EMPLOYER Trustees who shall, together with their successor Trustees designated to the manner provided in said Agreements and Declarations of Trusts and jointly with an equal number of Trustees appointed by the Union, carry out the terms and conditions of the TRUST instruments."** Please see Paragraph 4 of Exhibit 1.

**"This Agreement shall remain in full force and effect through April 30, 2017 and shall continue thereafter unless there has been sixty (60) days written notice, by registered or certified mail, by either party hereto of the desire to modify and amend this Agreement for negotiations. The EMPLOYER and the UNION agree to be bound by the area-wide negotiated contracts with the various Associations, incorporating them into this Memorandum of Agreement and extending this Agreement for the life of the newly negotiated contract, if not notified within the specified period of time."** Please see Paragraph 8 of Exhibit 1.

6.    Defendant has not given written notification of its intent to terminate the agreement referenced as exhibit 1. As such, said agreement remains in effect and the parties are bound to same.

7.    Based on the terms and conditions contained in exhibit 1, defendant is bound by the terms and conditions as set forth in the Restated Agreement and Declaration of Trust

establishing the Central Laborers' Pension, Welfare & Annuity Funds. The Restated

Agreement and Declaration of Trust is attached hereto as exhibit 2 and incorporated by

reference herein.

       8.      ARTICLE IV of the Restated Agreement and Declaration of Trust entitled

Contributions to the Fund provides, in pertinent part:

> **Section 1. BASIS OF CONTRIBUTIONS TO PLAN.** In order to effectuate the purpose
> hereof, each Employer shall contribute to the Fund the amount required by any
> written agreement as defined herein between the Union or the Trust and the
> Employer. The rate of contributions shall at all times be governed by the applicable
> written Agreement then in force and effect, together with any amendments,
> supplements or modifications thereto provided, however, that in the case of an
> Employer who is required to make contributions by reason of his being party to a
> written other than a Collective Bargaining Agreement the amount of the contribution
> shall be required by the Collective Bargaining Agreement in effect between the
> Employer Association and the Local Union having jurisdiction over the geographical
> area in which the covered Employees perform work. It shall not be a defense to any
> claim by the Trustees or an Employee for delinquent contributions from an Employer
> that such Employer had entered into an agreement with any employee purporting to
> waive the employee's right to strict compliance with the provisions of the applicable
> Collective Bargaining Agreement or other written agreement, With respect to the
> amount of contributions required thereby no employee shall be permitted to contract
> or otherwise agree with or permit his employer to provide wage or benefit payments
> which do not conform to the aforesaid requirements and any such contract or
> agreement shall be null and void.

> **Section 3. REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS.**
> The Employers shall make all reports on contributions required by the Trustees. Each
> Employer shall promptly furnish to the Trustees, on demand, the names of its
> employees, their social security number, the hours worked by each employee, and
> such other information as the Trustees may reasonably require in connection with
> the administration of the Trust and Pension Plan. The Trustees may, on reasonable
> notice, have an audit made by an independent certified public accountant or its
> representatives or such other person or persons as designated by the Trustees of all
> records of the Employer as described in Article IV, Section 8, in connection with the
> Employer's contributions and/or reports.
>
> Where an audit discloses a difference between hours actually worked by an employee
> and hours reported to the Trust by his Employer and where such audit discloses any
> willful violation of any requirements of this Trust Agreement or rules and regulations
> adopted in connection herewith, those officers and directors of such Employer, if
> corporation, who supervised the completion of report forms, signed report forms or

can be determined to have had personal knowledge of such conduct, shall be personally liable for any underpayment or other pecuniary loss to the Fund as a result of such conduct. Nothing herein shall prevent personal liability for owners or partners who are not otherwise incorporated.

Each employer, by agreeing to be bound by the terms hereof, acknowledges and agrees that liquidated damages, as set forth in Section 7 herein below, remain due and owing irrespective of the payment or not of the underlying contributions for which the liquidated damages were assessed shall constitute a default in payment pursuant to Section 6 of his Article.

**Section 7. LIQUIDATED DAMAGES.** All Employers not paying contributions within fifteen (15) days from the date they are originally due, or the due date as extended as provided above, shall pay in addition to said contributions liquidated damages in the amount of ten percent (10%) of the delinquent contributions or twenty five dollars ($25.00), whichever is greater, and said damages shall be paid with the delinquent contributions. Each Employer party to or otherwise bound by this Trust Agreement acknowledge that the liquidated damages and acknowledge the costs to be actual and substantial though difficulty to ascertain; however, each Employer acknowledges these costs to be minimally ten percent (10%) of the delinquent contributions or twenty-five dollars ($25.00), whichever is greater, waiving the necessity of any additional proof thereof.

**Section 9. COLLECTION COSTS.** Except as hereinafter provided in this Article, in the event an Employer becomes delinquent in his contributions, said delinquent Employer shall be liable for all reasonable costs incurred in the collection process including the court fees, attorneys' fees, filing fees, and any other expenses actually incurred by the Trustees in the course of the collections process.

**Section 10. AUDITS AND THE COSTS THEREOF.** The Trustees shall have the authority to audit the records of the Employer as described in Article IV, Section 8, for the purposes of determining the accuracy of contributions to the Pension Fund. In the event it becomes necessary for the Trustees to file suit and/or otherwise retain legal counsel to enforce their authority to perform an audit, the Employer shall be liable for all reasonable costs incurred including court fees, attorneys' fees, filing fees, audit cost, and any other expenses actually incurred by the Trustee in the court of the action without regard to whether the Employer did or did not owe delinquent contributions. *Please see the Restated Agreement and Declaration of Trust, attached hereto as exhibit 2 and incorporated by reference herein.*

9.      Based on the terms and conditions contained in exhibit 1 defendant is bound

by the terms and conditions as set forth in the Restated Agreement and Declaration of Trust

establishing the Central Laborers' Welfare Fund. The Restated Agreement and Declaration

of Trust is attached hereto as exhibit 3 and incorporated by reference herein,

    10.    ARTICLE V of the Restated Agreement and Declaration of Trust of the Central

Laborers' Welfare Funds entitled Contributions to the Fund provides, in pertinent part:

**Section 1. BASIS OF CONTRIBUTIONS TO PLAN.** In order to effectuate the purpose hereof, each Employer shall contribute to the Fund the amount required by any written agreement as defined herein between the Union or the Trust and the Employer. The rate of contributions shall at all times be governed by the applicable written Agreement then in force and effect, together with any amendments, supplements or modifications thereto provided, however, that in the case of an Employer who is required to make contributions by reason of his being party to a written other than a Collective Bargaining Agreement the amount of the contribution required shall be identical to the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Local Union having jurisdiction over the geological area in which the covered Employees perform work. Ti shall not be a defense to any claim by the Trustees or an Employee for delinquent contributions from an Employer that such Employer had entered into an agreement with any employee purporting to waive the employee's rights to strict compliance with the provisions of the applicable Collective Bargaining Agreement or other written agreement.  With respect to the amount of contributions required thereby no employee shall be permitted to contract or otherwise agree with or permit his employer to provide wage or benefit payments which do not conform to the aforesaid requirements and any such contract or agreement shall be null and void.

**Section 3. REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS.**
The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security number, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust and Welfare Plan. The Trustees may, on reasonable notice, have an audit made by an independent certified public accountant or its representatives or such other persons as designated by the Trustees of all records of the Employer as described in Article IV, Section 8, in connection with the Employer's contributions and/or reports.

All employers shall be required to maintain records in compliance with procedures develop and communicated by the Administrator from the beginning of such Employer's participation in the Fund forward unless given written authorization for variance by the Administrator.  All such records shall be maintained for a period of ten (10) years unless earlier destruction of the same is authorized by the Trustees. The Trustees shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, after being requested to do so by the

Trustees, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the result of said investigation shall be conclusive.

Where an audit discloses a difference between hours actually worked by an employee and hours reported to the Trust by his Employer and where such audit discloses any willful violation of any requirements of this Trust Agreement or rules and regulations adopted in connection herewith, those officers and directors of such Employer, if a corporation, who supervised the completion of report forms, signed report forms or can be determined to have had personal knowledge of such conduct.  Nothing herein shall prevent personal liability for owner or partners who are not otherwise incorporated

Each employer, by agreeing to be bound by the terms hereof, acknowledges and agrees that liquidated damages, as set forth in Section 7 herein below, remain due and owing irrespective of the payment or not of the underlying contributions for which the liquidated damages were assessed, and failure to pay liquidated damages duly assessed shall constitute a default in payment pursuant to Section 6 of the Article.

### Section 5.  MODE OF PAYMENT
All contributions shall be due and payable on the fifteenth (15th) day of the month next following the calendar month in which eligible employees perform work with respect to which contributions are required.  The time for payment may be extended by the Trustees by resolution, but in no event shall such extension exceed forty-five (45) days in accordance with applicable regulations issued by the Secretary of Labor pursuant to ERISA.

### Section 6.  DEFAULT IN PAYMENT
Non-payment by an Employer of any contributions when due shall not relieve any other employer of his obligation to make payments.  The Trustees may take any action necessary to enforce payments of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity.

### Section 7.  LIQUIDATED DAMAGES
All employers not paying contributions within fifteen (15) days from the date they are originally due, or the due date as extended as provide above, shall pay in addition to said contributions liquidated damages in the amount of ten percent (10%) of the delinquent contributions or Twenty-five dollars ($25.00), whichever is greater, and said damages shall be paid with the delinquent contributions.  Each employer party to or otherwise bound by this Trust Agreement acknowledge that the liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however, each Employer acknowledges these costs to be at least ten percent (10%) of the delinquent contributions or Twenty-Five Dollars ($25.00), whichever is greater, waiving the necessity of any additional proof thereof.

### Section 8.  INTEREST

Delinquent contributions shall bear interest at such rate as may have been established by the Trustees prior to determining the existence of the delinquency. Trustees may determine and establish from time to time the appropriate interest rate for delinquencies and when the delinquencies shall commence to bear interest.  The Trustees shall have the authority to waive the foregoing interest charge in the event the delinquent Employer executes a note or enters into an installment payment agreement providing for payment of said delinquency on such terms as acceptable to the Trustees under the circumstances.

### Section 9.  COLLECTION COSTS

Except as hereinafter provided in this Article, in the event an Employer becomes delinquent in his contributions, said delinquent Employer shall be liable for all reasonable costs incurred in the collection process including court fees, attorneys' fees, filing fees, and any other expenses actually incurred by the Trustees in the court of the collection process.

### Section 10.  AUDIT AND THE COSTS THEREOF.

The Trustees shall have the authority to audit the records of the Employer as described in Article IV, Section 8, for the purposes of determining the accuracy of contributions to the Welfare Fund.  In the event it becomes necessary for the Trustees to file suit and/or otherwise retain legal counsel to enforce their authority to perform an audit, the Employer shall be liable for all reasonable costs incurred including court fees, attorney's fees, filing fees, audit costs, and any other expenses actually incurred by the Trustees in the course of action, without regard to whether the employer did or did not owe delinquent contributions.

In the event an audit determines that there are no delinquent contributions due the Fund, other than in situations as noted in the above paragraph, the Fund shall pay the entire Audit Cost.  In the event the audit determines that there are delinquent contributions due the Fund which were intentionally not paid by the Employer, the entire Audit Cost shall be assessed against the Employer.  Intentional non-payment shall include, but not be limited to, issuance of a check or other order for payment that is not honored by the bank or other institution on  which it is drawn and shall include non-payment due to lack of funds on the part of the employer.

In the event an audit determines that there are delinquent contributions which are unintentional, the Employer shall be assessed a proportion of the audit costs, if any, based upon a formula which shall be set from time to time by the Trustees in their discretion and reflected in the Minutes of the particular meeting where the formula is adopted or changed.  **Please see the Restated Agreement and Declaration of Trust attached hereto as Exhibit 3 and incorporated by reference herein.**

11.     According to the Trust Agreement, plaintiffs are entitled to collect liquidated

damages on all contributions that are paid late. Defendant has incurred liquidated damages.

12.     Defendant is obligated to make fringe benefit contributions to plaintiffs, under the terms of the Memorandum of Agreement (exhibit 1), Restated Agreement and Declaration of Trust (exhibit 2), and Restated Agreement and Declaration of Trust (exhibit 3).

13.     Between October 20, 2016 through the present, an authorized representative of defendant requested from various Local Labor Unions that fall within the jurisdiction of plaintiffs, employees for various construction projects awarded to defendant.

14.     Said employees were then provided to defendant from various Local Labor Unions that fall within the jurisdiction of plaintiffs' employees for various construction projects awarded to defendant.

15.     As an employer obligated to make fringe benefit contributions to plaintiffs, defendant is specifically required to do the following:

(a)     To pay monthly contributions to the Funds for each employee of the defendant and to make said contributions in a manner as required by the plaintiffs and payment of said contributions are based upon an hourly rate as stated in the applicable agreements; and

(b)     To make all of its payroll books and records available to plaintiffs for the purpose of auditing same, to determine whether defendant is making full payments as required under the applicable agreements;

(c)     To compensate plaintiffs for the additional administrative costs and burdens imposed by defendant's failure to pay, or untimely payment of contributions, by way of the payment of liquidated damages in the amount of ten percent (10%) of any and all contributions which are not timely received by plaintiffs for a particular month, as specified fully in Paragraph 4(a) above, together with interest as provided in ERISA, 29 U.S.C. §1132 (g);

(d)     To pay any and all costs incurred by plaintiffs in auditing defendant's payroll records, should it be determined that defendant was delinquent in the reporting or submission of all contributions required of it to be made to plaintiffs;

(e) To pay plaintiffs' reasonable attorneys' fees and costs necessarily incurred in the prosecution of any action to require defendant to submit its payroll books and records for audit or to recover delinquent contributions.

16.     Defendant has breached its obligation to plaintiffs and its obligations under the plans in the following respects:

(a) Defendant has failed to make payment of contributions and liquidated damages; and

(b) Defendant has been delinquent in reporting the hours worked by employees;

17.     Upon careful review of all records maintained by plaintiffs, prepared and submitted by defendant, there are amounts due and owing by defendants in the amount of Two Thousand Five Hundred Forty-Seven Dollars and Eighty-Five Cents ($2,547.85). Please see the Revised Breakdown of Amounts Due and Owing attached hereto as exhibit 4 and incorporated by reference herein

18.     The known amounts owed are based upon the defendant's failure to submit all required reports; failure to accurately state all hours for which contributions are due on reports previously submitted; or its failure to file reports or contributions in a timely fashion.

19.     Further, there is the possibility that additional contributions and liquidated damages will come due during the pendency of this lawsuit.

20.     Plaintiffs have requested defendant to perform its obligations as aforesaid, but defendant has failed and refused to so perform.

21.     Defendant's continuing refusal and failure to perform it obligations to plaintiffs is causing and will continue to cause irreparable injuries to plaintiffs for which plaintiffs have no adequate remedy at law.

WHEREFORE, plaintiffs, **Central Laborers' Pension, Welfare and Annuity Funds**, pray this Court enter Judgment in their favor and against defendant, **MB LAND COMPANY, LLC** d/b/a **MLC Construction.** as follows:

(a)    That defendant be enjoined and ordered to submit all delinquent monthly contribution reports to plaintiffs with the information required to be provided thereon, to continue to submit such reports while this is pending, and to comply with its contractual obligation to timely submit such reports in the future;

(b)    That judgment be entered in favor of plaintiffs and against defendant for all unpaid contributions, liquidated damages, any costs of auditing defendant's records, accrued interest, and plaintiffs' reasonable attorneys' fees and court costs necessarily incurred in this action as specified herein, or as subsequently determined, all as provided for in the plans and in ERISA;

(c)    Judgment be entered against defendant and defendant be decreed to pay to the plaintiffs the sum of Two Thousand Five Hundred Forty-Seven Dollars and Eighty-Five Cents ($2,547.85), plus whatever sums are determined to be due;

(d)    That defendant be decreed to pay all costs attendant to any audit of defendant's payroll books and records;

(e)    That defendant be decreed to pay the plaintiffs its reasonable lawyers' fees, together with its costs of suit; and

(f)    That plaintiffs have such further relief as may be deemed just and equitable by the Court, all at defendant' cost.

### Count II
**Matthew Burgess, Individually**
**29 U.S.C. §§ 1132, 1145**

COME NOW plaintiffs, **Central Laborers' Pension, Welfare & Annuity Funds**, by and through their attorneys, Foley & Kelly, LLC, and for Count II of their Complaint against defendant, **Matthew Burgess,** individually, state as follows:

1.    This action arises under the laws of the United States and is brought pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§

1132,1145 (hereinafter referred to as "ERISA"). Jurisdiction is based upon the existence of questions arising thereunder, as hereinafter more fully appears.

2.     Plaintiffs, **Central Laborers' Pension, Welfare & Annuity Funds**, are various pension, welfare and related joint labor-management funds and bring this action as "employee welfare benefit funds" and "plans", under the laws of ERISA.

3.     Defendant, **Matthew Burgess,** is an individual conducting business in the State of Illinois, a signatory to an agreement with plaintiffs, and is an employer as defined under ERISA.

4.     Defendant executed a Memorandum of Agreement dated October 20, 2016 thereby binding defendant to pay contributions to plaintiffs for employees of defendant within the jurisdiction of plaintiffs. Said Agreement is attached hereto as exhibit 1 and incorporated by reference herein.

5.     Exhibit 1 pertinently provides:

> **"This Agreement is entered into by and between the undersigned, herein called the "EMPLOYER" and the GREAT PLAINS LABORERS' DISTRICT COUNCIL, herein called the "UNION", representing and encompassing Local Unions Nos. 32, 165, 231, 309, 362, 393, 538, 727, 751, 911 and 996, together with any other locals which may come within the jurisdiction of the UNION."** Please see paragraph 1 of Exhibit 1.

> **"The EMPLOYER herein adopts all of those Collective Bargaining Agreements between the UNION and the NORTHERN ILLINOIS BUILDING CONTRACTORS ASSOCIATION, NORTHWESTERN ILLINOIS CONTRACTORS ASSOCIATION, ILLINOIS VALLEY CONTRACTOS ASSOCIATION, WESTERN ILLINOIS CONTRACTORS ASSOCIATION, GREATER PEORIA CONTRACTOS AND SUPPLIERS ASSOCIATION, INC., BUILDERS ASSOCIATION OF TAZEWELL COUNTY, INC., HIGHWAY AND HEAVY CONSTRUCTION CONTRACTORS ASSOCIATION OF TAZEWELL AND FULTON COUNTIES, QUAD-CITY BUILDERS ASSOCIATION, INC., THE ASSOCIATED CONTRACTORS OF THE QUAD CITIES, THE ASSOCIATED GENERAL CONTRACTORS OF ILLINOIS, CENTRAL ILLINOIS BUILDERS OF A.G.C., MCLEAN COUNTY CONTRACTORS GROUP, KANKAKEE AREA CONTRACTORS ASSOCIATION, INC., and all other employer association**

**with whom the UNION or any of its affiliated locals have a duly negotiated and executed bargaining agreement and adopts all such agreements together with all amendments thereto."** Please see Paragraph 2 of Exhibit 1.

**"The EMPLOYER agrees to pay the amounts which the EMPLOYER is bound to pay under the Collective Bargaining Agreements to the CENTRAL LABORERS' PENSION FUND, to the NORTH CENTRAL ILLINOIS LABORERS' HEALTH & WELFARE FUND, to the ILLINOIS LABORERS' AND CONTRACTORS' TRAINING TRUST FUND, to the LABORERS' LOCAL 231 HEALTH AND WELFARE FUND, to the LABORERS' LOCAL 231 PENSION FUND, to the NORTHER ILLINOIS AND IOWA LABORERS' HEALTH AND WELFARE TRUST, to the CENTRAL LABORERS' ANNUITY FUND, to the NORTHERN ILLINOIS ANNUITY FUND, to the GREAT PLAINS LABORERS' ANNUITY FUND, to the LABOERS' LOCAL 231 ANNUITY FUND, to the LABORERS' OF ILLINOIS VACATION FUND, to the NORTH CENTRAL ILLINOIS LABORERS' DISTRICT COUNCIL LABORERS-EMPLOYERS COOPERATION AND EDUCATION TRUST, to the MIDWEST REGION FOUNDATION FOR FAIR CONTRACTING, to the MIDWEST REGION ORGANIZING COMMITTEE, to the LABORERS' POLITICAL LEAGUE, and any other BENEFIT FUND which may hereafter be created to established pursuant to any of the forgoing COLLECTIVE BARGAINING AGREEMENTS (FRINGE BENEFIT FUNDS), and to be bound by and be considered a party to the Agreements and Declaration of Trust creating said Trust Funds as if EMPLOYER had signed and received the original copies of the Trust instruments and amendments thereto. The EMPLOEYR ratifies and confirms the appointment of the EMPLOYER Trustees who shall, together with their successor Trustees designated to the manner provided in said Agreements and Declarations of Trusts and jointly with an equal number of Trustees appointed by the Union, carry out the terms and conditions of the TRUST instruments."** Please see Paragraph 4 of Exhibit 1.

**"This Agreement shall remain in full force and effect through April 30, 2017 and shall continue thereafter unless there has been sixty (60) days written notice, by registered or certified mail, by either party hereto of the desire to modify and amend this Agreement for negotiations. The EMPLOYER and the UNION agree to be bound by the area-wide negotiated contracts with the various Associations, incorporating them into this Memorandum of Agreement and extending this Agreement for the life of the newly negotiated contract, if not notified within the specified period of time."** Please see Paragraph 8 of Exhibit 1.

6.      Defendant has not given written notification of its intent to terminate the agreement referenced as exhibit 1. As such, said agreement remains in effect and the parties are bound to same.

7.     Based on the terms and conditions contained in exhibit 1, defendant is bound by the terms and conditions as set forth in the Restated Agreement and Declaration of Trust establishing the Central Laborers' Pension, Welfare & Annuity Funds. The Restated Agreement and Declaration of Trust is attached hereto as exhibit 2 and incorporated by reference herein.

8.     ARTICLE IV of the Restated Agreement and Declaration of Trust entitled Contributions to the Fund provides, in pertinent part:

**Section 1. BASIS OF CONTRIBUTIONS TO PLAN.** In order to effectuate the purpose hereof, each Employer shall contribute to the Fund the amount required by any written agreement as defined herein between the Union or the Trust and the Employer. The rate of contributions shall at all times be governed by the applicable written Agreement then in force and effect, together with any amendments, supplements or modifications thereto provided, however, that in the case of an Employer who is required to make contributions by reason of his being party to a written other than a Collective Bargaining Agreement the amount of the contribution shall be required by the Collective Bargaining Agreement in effect between the Employer Association and the Local Union having jurisdiction over the geographical area in which the covered Employees perform work. It shall not be a defense to any claim by the Trustees or an Employee for delinquent contributions from an Employer that such Employer had entered into an agreement with any employee purporting to waive the employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or other written agreement, With respect to the amount of contributions required thereby no employee shall be permitted to contract or otherwise agree with or permit his employer to provide wage or benefit payments which do not conform to the aforesaid requirements and any such contract or agreement shall be null and void.

**Section 3. REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS.**
The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security number, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust and Pension Plan. The Trustees may, on reasonable notice, have an audit made by an independent certified public accountant or its representatives or such other person or persons as designated by the Trustees of all records of the Employer as described in Article IV, Section 8, in connection with the Employer's contributions and/or reports.

Where an audit discloses a difference between hours actually worked by an employee and hours reported to the Trust by his Employer and where such audit discloses any willful violation of any requirements of this Trust Agreement or rules and regulations adopted in connection herewith, those officers and directors of such Employer, if corporation, who supervised the completion of report forms, signed report forms or can be determined to have had personal knowledge of such conduct, shall be personally liable for any underpayment or other pecuniary loss to the Fund as a result of such conduct. Nothing herein shall prevent personal liability for owners or partners who are not otherwise incorporated.

Each employer, by agreeing to be bound by the terms hereof, acknowledges and agrees that liquidated damages, as set forth in Section 7 herein below, remain due and owing irrespective of the payment or not of the underlying contributions for which the liquidated damages were assessed shall constitute a default in payment pursuant to Section 6 of his Article.

**Section 7. LIQUIDATED DAMAGES.** All Employers not paying contributions within fifteen (15) days from the date they are originally due, or the due date as extended as provided above, shall pay in addition to said contributions liquidated damages in the amount of ten percent (10%) of the delinquent contributions or twenty five dollars ($25.00), whichever is greater, and said damages shall be paid with the delinquent contributions. Each Employer party to or otherwise bound by this Trust Agreement acknowledge that the liquidated damages and acknowledge the costs to be actual and substantial though difficulty to ascertain; however, each Employer acknowledges these costs to be minimally ten percent (10%) of the delinquent contributions or twenty-five dollars ($25.00), whichever is greater, waiving the necessity of any additional proof thereof.

**Section 9. COLLECTION COSTS.** Except as hereinafter provided in this Article, in the event an Employer becomes delinquent in his contributions, said delinquent Employer shall be liable for all reasonable costs incurred in the collection process including the court fees, attorneys' fees, filing fees, and any other expenses actually incurred by the Trustees in the course of the collections process.

**Section 10. AUDITS AND THE COSTS THEREOF.** The Trustees shall have the authority to audit the records of the Employer as described in Article IV, Section 8, for the purposes of determining the accuracy of contributions to the Pension Fund. In the event it becomes necessary for the Trustees to file suit and/or otherwise retain legal counsel to enforce their authority to perform an audit, the Employer shall be liable for all reasonable costs incurred including court fees, attorneys' fees, filing fees, audit cost, and any other expenses actually incurred by the Trustee in the court of the action without regard to whether the Employer did or did not owe delinquent contributions. *Please see the Restated Agreement and Declaration of Trust, attached hereto as exhibit 2 and incorporated by reference herein.*

9.     Based on the terms and conditions contained in exhibit 1 defendant is bound by the terms and conditions as set forth in the Restated Agreement and Declaration of Trust establishing the Central Laborers' Welfare Fund. The Restated Agreement and Declaration of Trust is attached hereto as exhibit 3 and incorporated by reference herein,

10.     ARTICLE V of the Restated Agreement and Declaration of Trust of the Central Laborers' Welfare Funds entitled Contributions to the Fund provides, in pertinent part:

**Section 1. BASIS OF CONTRIBUTIONS TO PLAN.** In order to effectuate the purpose hereof, each Employer shall contribute to the Fund the amount required by any written agreement as defined herein between the Union or the Trust and the Employer. The rate of contributions shall at all times be governed by the applicable written Agreement then in force and effect, together with any amendments, supplements or modifications thereto provided, however, that in the case of an Employer who is required to make contributions by reason of his being party to a written other than a Collective Bargaining Agreement the amount of the contribution required shall be identical to the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Local Union having jurisdiction over the geological area in which the covered Employees perform work. Ti shall not be a defense to any claim by the Trustees or an Employee for delinquent contributions from an Employer that such Employer had entered into an agreement with any employee purporting to waive the employee's rights to strict compliance with the provisions of the applicable Collective Bargaining Agreement or other written agreement.  With respect to the amount of contributions required thereby no employee shall be permitted to contract or otherwise agree with or permit his employer to provide wage or benefit payments which do not conform to the aforesaid requirements and any such contract or agreement shall be null and void.

**Section 3. REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS.**
The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security number, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust and Welfare Plan. The Trustees may, on reasonable notice, have an audit made by an independent certified public accountant or its representatives or such other persons as designated by the Trustees of all records of the Employer as described in Article IV, Section 8, in connection with the Employer's contributions and/or reports.

All employers shall be required to maintain records in compliance with procedures develop and communicated by the Administrator from the beginning of such Employer's participation in the Fund forward unless given written authorization for

variance by the Administrator.  All such records shall be maintained for a period of ten (10) years unless earlier destruction of the same is authorized by the Trustees. The Trustees shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, after being requested to do so by the Trustees, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the result of said investigation shall be conclusive.

Where an audit discloses a difference between hours actually worked by an employee and hours reported to the Trust by his Employer and where such audit discloses any willful violation of any requirements of this Trust Agreement or rules and regulations adopted in connection herewith, those officers and directors of such Employer, if a corporation, who supervised the completion of report forms, signed report forms or can be determined to have had personal knowledge of such conduct.  Nothing herein shall prevent personal liability for owner or partners who are not otherwise incorporated

Each employer, by agreeing to be bound by the terms hereof, acknowledges and agrees that liquidated damages, as set forth in Section 7 herein below, remain due and owing irrespective of the payment or not of the underlying contributions for which the liquidated damages were assessed, and failure to pay liquidated damages duly assessed shall constitute a default in payment pursuant to Section 6 of the Article.

### Section 5.  MODE OF PAYMENT
All contributions shall be due and payable on the fifteenth (15th) day of the month next following the calendar month in which eligible employees perform work with respect to which contributions are required.  The time for payment may be extended by the Trustees by resolution, but in no event shall such extension exceed forty-five (45) days in accordance with applicable regulations issued by the Secretary of Labor pursuant to ERISA.

### Section 6.  DEFAULT IN PAYMENT
Non-payment by an Employer of any contributions when due shall not relieve any other employer of his obligation to make payments.  The Trustees may take any action necessary to enforce payments of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity.

### Section 7.  LIQUIDATED DAMAGES
All employers not paying contributions within fifteen (15) days from the date they are originally due, or the due date as extended as provide above, shall pay in addition to said contributions liquidated damages in the amount of ten percent (10%) of the delinquent contributions or Twenty-five dollars ($25.00), whichever is greater, and said damages shall be paid with the delinquent contributions.  Each employer party to or otherwise bound by this Trust Agreement acknowledge that the liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain;

however, each Employer acknowledges these costs to be at least ten percent (10%) of the delinquent contributions or Twenty-Five Dollars ($25.00), whichever is greater, waiving the necessity of any additional proof thereof.

### Section 8.  INTEREST

Delinquent contributions shall bear interest at such rate as may have been established by the Trustees prior to determining the existence of the delinquency. Trustees may determine and establish from time to time the appropriate interest rate for delinquencies and when the delinquencies shall commence to bear interest.  The Trustees shall have the authority to waive the foregoing interest charge in the event the delinquent Employer executes a note or enters into an installment payment agreement providing for payment of said delinquency on such terms as acceptable to the Trustees under the circumstances.

### Section 9.  COLLECTION COSTS

Except as hereinafter provided in this Article, in the event an Employer becomes delinquent in his contributions, said delinquent Employer shall be liable for all reasonable costs incurred in the collection process including court fees, attorneys' fees, filing fees, and any other expenses actually incurred by the Trustees in the court of the collection process.

### Section 10.  AUDIT AND THE COSTS THEREOF.

The Trustees shall have the authority to audit the records of the Employer as described in Article IV, Section 8, for the purposes of determining the accuracy of contributions to the Welfare Fund.  In the event it becomes necessary for the Trustees to file suit and/or otherwise retain legal counsel to enforce their authority to perform an audit, the Employer shall be liable for all reasonable costs incurred including court fees, attorney's fees, filing fees, audit costs, and any other expenses actually incurred by the Trustees in the course of action, without regard to whether the employer did or did not owe delinquent contributions.

In the event an audit determines that there are no delinquent contributions due the Fund, other than in situations as noted in the above paragraph, the Fund shall pay the entire Audit Cost.  In the event the audit determines that there are delinquent contributions due the Fund which were intentionally not paid by the Employer, the entire Audit Cost shall be assessed against the Employer.  Intentional non-payment shall include, but not be limited to, issuance of a check or other order for payment that is not honored by the bank or other institution on  which it is drawn and shall include non-payment due to lack of funds on the part of the employer.

In the event an audit determines that there are delinquent contributions which are unintentional, the Employer shall be assessed a proportion of the audit costs, if any, based upon a formula which shall be set from time to time by the Trustees in their discretion and reflected in the Minutes of the particular meeting where the formula is adopted or changed.  **Please see the Restated Agreement and Declaration of Trust attached hereto as Exhibit 3 and incorporated by reference herein.**

11.     According to the Trust Agreement, plaintiffs are entitled to collect liquidated damages on all contributions that are paid late. Defendant has incurred liquidated damages.

12.     Defendant is obligated to make fringe benefit contributions to plaintiffs, under the terms of the Memorandum of Agreement (exhibit 1), Restated Agreement and Declaration of Trust (exhibit 2), and Restated Agreement and Declaration of Trust (exhibit 3).

13.     Between October 20, 2016 through the present, an authorized representative of defendant requested from various Local Labor Unions that fall within the jurisdiction of plaintiffs, employees for various construction projects awarded to defendant.

14.     Said employees were then provided to defendant from various Local Labor Unions that fall within the jurisdiction of plaintiffs' employees for various construction projects awarded to defendant.

15.     As an employer obligated to make fringe benefit contributions to plaintiffs, defendant is specifically required to do the following:

> (a)     To pay monthly contributions to the Funds for each employee of the defendant and to make said contributions in a manner as required by the plaintiffs and payment of said contributions are based upon an hourly rate as stated in the applicable agreements; and
>
> (b)     To make all of its payroll books and records available to plaintiffs for the purpose of auditing same, to determine whether defendant is making full payments as required under the applicable agreements;
>
> (c)     To compensate plaintiffs for the additional administrative costs and burdens imposed by defendant's failure to pay, or untimely payment of contributions, by way of the payment of liquidated damages in the amount of ten percent (10%) of any and all contributions which are not timely received by plaintiffs for a particular month, as specified fully in Paragraph 4(a) above, together with interest as provided in ERISA, 29 U.S.C. §1132 (g);

     (d)    To pay any and all costs incurred by plaintiffs in auditing defendant's payroll records, should it be determined that defendant was delinquent in the reporting or submission of all contributions required of it to be made to plaintiffs;

     (e)    To pay plaintiffs' reasonable attorneys' fees and costs necessarily incurred in the prosecution of any action to require defendant to submit its payroll books and records for audit or to recover delinquent contributions.

16.    Defendant has breached its obligation to plaintiffs and its obligations under the plans in the following respects:

     (a)    Defendant has failed to make payment of contributions and liquidated damages; and

     (b)    Defendant has been delinquent in reporting the hours worked by employees;

17.    Upon careful review of all records maintained by plaintiffs, prepared and submitted by defendant, there are amounts due and owing by defendants in the amount of Two Thousand Five Hundred Forty-Seven Dollars and Eighty-Five Cents ($2,547.85). Please see the Revised Breakdown of Amounts Due and Owing attached hereto as exhibit 4 and incorporated by reference herein

18.    The known amounts owed are based upon the defendant's failure to submit all required reports; failure to accurately state all hours for which contributions are due on reports previously submitted; or its failure to file reports or contributions in a timely fashion.

19.    Further, there is the possibility that additional contributions and liquidated damages will come due during the pendency of this lawsuit.

20.    Plaintiffs have requested defendant to perform its obligations as aforesaid, but defendant has failed and refused to so perform.

21.     Defendant's continuing refusal and failure to perform it obligations to plaintiffs is causing and will continue to cause irreparable injuries to plaintiffs for which plaintiffs have no adequate remedy at law.

WHEREFORE, plaintiffs, **Central Laborers' Pension, Welfare and Annuity Funds**, pray this Court enter Judgment in their favor and against defendant, **Matthew Burgess,** individually, as follows:

(a)     That defendant be enjoined and ordered to submit all delinquent monthly contribution reports to plaintiffs with the information required to be provided thereon, to continue to submit such reports while this is pending, and to comply with its contractual obligation to timely submit such reports in the future;

(c)     That judgment be entered in favor of plaintiffs and against defendant for all unpaid contributions, liquidated damages, any costs of auditing defendant's records, accrued interest, and plaintiffs' reasonable attorneys' fees and court costs necessarily incurred in this action as specified herein, or as subsequently determined, all as provided for in the plans and in ERISA;

(c)     Judgment be entered against defendant and defendant be decreed to pay to the plaintiffs the sum of Two Thousand Five Hundred Forty-Seven Dollars and Eighty-Five Cents ($2,547.85), plus whatever sums are determined to be due;

(d)     That defendant be decreed to pay all costs attendant to any audit of defendant's payroll books and records;

(e)     That defendant be decreed to pay the plaintiffs its reasonable lawyers' fees, together with its costs of suit; and

(f)     That plaintiffs have such further relief as may be deemed just and equitable by the Court, all at defendant' cost.

By:     _/s/ Patrick R. Foley_
Patrick R. Foley
#06277005

Foley & Kelly, LLC
Attorneys for Plaintiffs
107 W. Main St., Suite 4
Belleville, IL 62220

(618) 234-7977
Fax:  (618) 235-4185